No. 13-2337

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

Fortres Grand Corporation
Plaintiff-Appellant

v.

Warner Bros. Entertainment Inc.
Defendant-Appellee

_____

Appeal from the United States District Court
For the Northern District of Indiana, South Bend Division
Case No. 3:12-cv-00535-PPS-CAN
Chief Judge Philip P. Simon

_____

BRIEF AND REQUIRED SHORT APPENDIX OF
PLAINTIFF-APPELLANT, FORTRES GRAND CORPORATION

_____

Phillip Barengolts
Elisabeth K. O'Neill
Pattishall, McAuliffe, Newbury
Hilliard & Geraldson LLP
200 South Wacker Drive, Suite 2900
Chicago, Illinois 60606
(312) 554-8000

Attorneys for Appellant

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>13-2337</u>

Short Caption: <u>Fortres Grand Corporation v. Warner Bros. Entertainment Inc.</u>

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

<u>Fortres Grand Corporation</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP</u>

<u>May Oberfell Lorber</u>

(3) If the party or amicus is a corporation:

i)   Identify all its parent corporations, if any; and

<u>N/A</u>

ii) list any publicly held company that owns 10% or more of the party's or amicus ' stock:

<u>N/A</u>

TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................iii-iv

TABLE OF AUTHORITIES ..........................................................................v-vi

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF ISSUES PRESENTED ...................................................... 2

STATEMENT OF THE CASE......................................................................... 2

STATEMENT OF FACTS ............................................................................... 3

    A.   Fortres Grand and Its Use of CLEAN SLATE...........................................3

    B.   Warner Bros. and Its Use of CLEAN SLATE ..........................................4

    C.   Impact of Warner Bros.' Use of CLEAN SLATE on Fortres Grand's Consumers
        ..............................................................................................................5

SUMMARY OF THE ARGUMENT ................................................................ 5

STANDARD OF REVIEW............................................................................... 7

ARGUMENT .................................................................................................... 7

    A.   It is Not Implausible on Its Face That Potential Purchasers of Fortres Grand's
        CLEAN SLATE Software Are Likely to Mistakenly Believe That the Software
        is Authorized by or Otherwise Associated with Warner Bros., or the Movie *The*
        *Dark Knight Rises*, Because of Warner Bros.' Use of CLEAN SLATE  for
        Software in That Movie................................................................................7

        1.   The District Court Wrongly Ruled that in Order to State a Claim for
             Reverse Confusion, Fortres Grand had to Allege that the Public had Been
             Deceived into Believing that Fortres Grand Created or Sponsored Warner
             Bros.' Movie ...........................................................................................8

        2.   The District Court Wrongly Found that Warner Bros' Fictional Use of
             CLEAN SLATE Could Not be Actionable............................................11

        3.   The District Court Wrongly Found Consumer Confusion Between the "Real"
             Products Implausible as a Matter of Law .........................................15

4.   The District Court Improperly Found Confusion Unlikely by Comparing the Parties' Products and Not Addressing Any Other Seventh Circuit Confusion Factors ........................................................................................................ 16

5.   The District Court Failed to Consider Fortres Grand's State Unfair Competition Claims Apart From Fortres Grand's Federal Claims ............... 17

B.   The District Court Wrongly Afforded Warner Bros.' Absolute First Amendment Protection ........................................................................................ 18

1.   The First Amendment Does not Absolutely Protect Speech that is Likely to Cause Consumer Confusion .................................................................... 19

C.   The District Court Wrongly Considered and Relied on Two Unauthorized Website Printouts in Ruling on Warner Bros.' Motion to Dismiss ..................... 24

CONCLUSION ....................................................................................................... 26

CERTIFICATE OF SERVICE ................................................................................. 28

CIRCUIT RULE 30(d) STATEMENT ...................................................................... 29

ATTACHED REQUIRED SHORT APPENDIX ............. **Error! Bookmark not defined.**

TABLE OF CONTENTS – SHORT APPENDIX ............. **Error! Bookmark not defined.**

TABLE OF AUTHORITIES

## Cases

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611 (7th Cir. 1993) ........... 17

*Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969 (7th Cir. 2002).... 7, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................... 7

*Board of Trustees of State University of New York v. Fox*, 494 U.S. 469 (1989)....... 26

*Curran v. Amazon.com, Inc.*, CIV.A. 2:07-0354, 2008 WL 472433 (S.D.W. Va. Feb. 19, 2008) ...................................................................................................................... 25

*Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481 (7th Cir. 2007) ............ 9, 10

*Davis v. Walt Disney Co.*, 430 F.3d 901 (8th Cir. 2005)...................................12, 13, 17

*Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998) .... .................................................................................................................13, 14, 16

*Felsher v. Univ. of Evansville*, 755 N.E.2d 589 (Ind. 2001)....................................... 18

*G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534 (7th Cir. 2012) ........................ 7

*G. D. Searle & Co. v. Charles Pfizer & Co.*, 265 F.2d 385 (7th Cir. 1959)................. 14

*Hartzler v. Goshen Churn & Ladder Co.*, 55 Ind. App. 455 (1914) ........................... 18

*Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977) ................................................................................................................................ 16

*Keaton & Keaton v. Keaton*, 842 N.E.2d 816 (Ind. 2006) .......................................... 18

*Kohler Co. v. Moen Inc.,* 12 F.3d 632 (7th Cir. 1993).................................................. 23

*Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) ................................................. 24

*McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163 7th Cir. 1986)....... 17

*Mid-America Title Co. v. Kirk*, 991 F.2d 417 (7th Cir. 1993) ...................................... 7

*Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546 (S.D. Fla. 1990) ..................................................................................................12, 13, 17

*Powertronix Corp. v. PV Powered, Inc.*, C-08-5187 MMC, 2009 WL 102706 (N.D. Cal. Jan. 14, 2009) ...................................................................................................... 24

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ...........................................19, 20, 21

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992)....... 8, 10

*Serenity Springs v. LaPorte Cnty. Convention & Visitors Bureau*, 986 N.E.2d 314 (Ind. Ct. App. 2013) .................................................................................................. 18

*TE-TA-MA Truth Foundation Family of URI, Inc. v. World Church of the Creator*, 297 F.3d 662 (7th Cir. 2002) ........................................................................21, 22, 24

*Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002) .......................................................... 24

*United We Stand America, Inc. v. United We Stand, America New York, Inc.* (2d Cir. 1997). ......................................................................................................................... 20

*Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976) ........................................................................................................................ 26

*Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013)................................................... 25

*Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794 (N.D. Ill. 2012)............ 8

## Statutes

15 U.S.C. § 1051............................................................................................................. 1

15 U.S.C. § 1121............................................................................................................. 1

15 U.S.C. §1125...................................................................................... 12

28 U.S.C. § 1291 ..................................................................................... 2

28 U.S.C. § 1332...................................................................................... 1

28 U.S.C. § 1338(a) and (b).................................................................... 1

**Other Authorities**

Pierre N. Leval, *Trademark: Champion of Free Speech*, 27 COLUM. J.L. & ARTS 187,

   202-03 (2004) ....................................................................................... 20

W. Page Keeton, PROSSER AND KEETON ON THE LAW OF TORTS, 105 (5th ed. 1984) .. 18

**Rules**

Fed. R. Civ. P. 12(b) ............................................................................... 6

Cir. R. 28 ................................................................................................ 1

## JURISDICTIONAL STATEMENT

This is an appeal from the United States District Court for the Northern District of Indiana, the Honorable Philip P. Simon presiding.  Plaintiff-Appellant Fortres Grand Corporation, pursuant to Seventh Circuit Court of Appeals Circuit Rule 28, submits the following information for its jurisdictional statement.

District Court Jurisdiction: Plaintiff, Fortres Grand Corporation, brought this action in the United States District Court for the Northern District of Indiana against defendant, Warner Bros. Entertainment Inc., alleging trademark infringement and unfair competition in violation of federal law and unfair competition in violation of Indiana common law. The District Court has jurisdiction of the claims by virtue of the fact that: (1) this is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §1051 *et seq.* (the Lanham Act), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b); and (2) this is a civil action between citizens of different states in which the value of the amount in controversy exceeds $75,000.00, exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332. Plaintiff, Fortres Grand Corporation is an Indiana corporation with its principal place of business in Plymouth, Indiana. Defendant Warner Bros. Entertainment Inc. is a Delaware corporation with its principal place of business in Burbank, California.

Appellate Court Jurisdiction: The District Court granted Defendant's Motion to Dismiss and dismissed Plaintiff's complaint without prejudice on May 16, 2013.

The District Court granted Plaintiff an opportunity to file an amended complaint within 28 days of that order. If Plaintiff chose not to do so, the District Court indicated that it would issue another order dismissing the case with prejudice. The clerk's entry of judgment was entered on May 17, 2013, based on the District Court's order dismissing the complaint without prejudice. The District Court dismissed Plaintiff's complaint with prejudice on June 13, 2013. This appeal was timely filed on June 19, 2013. The Seventh Circuit Court of Appeals has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1. Is it implausible on its face that potential purchasers of Fortres Grand's CLEAN SLATE software are likely to believe mistakenly that the software is authorized by or otherwise associated with Warner Bros., or the movie *The Dark Knight Rises*, because of Warner Bros.' use of CLEAN SLATE as a name for software in that movie?

2. Is Warner Bros.' use of CLEAN SLATE as a name for software in the movie *The Dark Knight Rises*, which has caused Fortres Grand to lose sales of CLEAN SLATE software, immune from claims of trademark infringement and unfair competition under the First Amendment?

## STATEMENT OF THE CASE

This case was filed by Fortres Grand Corporation on September 19, 2012. Dkt. No. 1. Fortres Grand pleaded trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*. and Indiana unfair

competition law. *Id.* Warner Bros. moved to dismiss the case based upon its theory that Warner Bros.' uses of CLEAN SLATE featured in the movie *The Dark Knight Rises* and on commercial websites were protected by the First Amendment, and that Warner Bros.' use of CLEAN SLATE in *The Dark Knight Rises* was not actionable under federal trademark law. The district court granted Warner Bros.' motion to dismiss.

## STATEMENT OF FACTS

### A.    Fortres Grand and Its Use of CLEAN SLATE

In 2000, Fortres Grand, a security software developer, released CLEAN SLATE, a downloadable computer security program that restores computers to their original configurations. Verified Complaint (hereinafter "Compl.") ¶ 7. Since then, Fortres Grand has invested millions of dollars to advertise, market and develop updated versions of CLEAN SLATE. As a result, Fortres Grand has sold millions of dollars of CLEAN SLATE software to date.

CLEAN SLATE is sold over the Internet, and its good reputation among Internet users is central to its success. Compl. ¶¶ 8, 13-15. Many so-called "security software" products available for download over the Internet are actually designed to trick users into compromising a computer system's security, potentially damaging computer systems, taking control over computer operations, and importing spyware, adware, and viruses. Compl. ¶ 14. Therefore, consumers are understandably, and rightly, wary when choosing security software products, lest they download a fake product. Compl. ¶¶ 13-15.

Fortres Grand registered its CLEAN SLATE trademark in 2001 with the United States Patent and Trademark Office and now owns an incontestable trademark registration for CLEAN SLATE for "computer software used to protect public access computers by scouring the computer drive back to its original configuration upon reboot," Reg. No. 2,514,853.  Compl. ¶ 12.

### B.    Warner Bros. and Its Use of CLEAN SLATE

Warner Bros. is a large entertainment company producing, among other things, movies, television, and software.  Compl. ¶ 16.  In July 2012, Warner Bros. released the film *The Dark Knight Rises*, the latest in its Batman franchise (hereinafter, the "Film").  Compl. ¶¶ 17-18.  It was wildly successful.  Compl.¶ 18.

A running plot point in the Film is the desire of the Catwoman character, otherwise known as Selina Kyle, to procure a software program called CLEAN SLATE that would erase her criminal history from every computer database in the world.  Compl. ¶¶ 19-20.  In other words, this CLEAN SLATE software is a hacking tool for criminals to wreak havoc with computer systems.  Compl. ¶ 20.

Warner Bros.' marketing for *The Dark Knight Rises* included at least two websites purporting to be official sites of the fictional Rykin Data Corporation, also featured in the Film, featuring advertisements for its CLEAN SLATE software. Compl. ¶ 22.  As a result of the use of CLEAN SLATE in *The Dark Knight Rises*, online commentators speculated about the potential existence of CLEAN SLATE software and whether it could work in reality.  Compl. ¶ 24.  Because of Warner Bros.' use of CLEAN SLATE in the Film, at the time of the Film's release online

searches for "clean slate software" returned many results relating to Warner Bros.' software. *Id.*

### C.   Impact of Warner Bros.' Use of CLEAN SLATE on Fortres Grand's Consumers

Because of confusion among potential consumers between Warner Bros.' CLEAN SLATE software and Fortres Grand's CLEAN SLATE software, and consumers' well-founded skepticism about fake and insidious security software, consumers  who may believe Fortres Grand's product is somehow connected to Warner Bros.' CLEAN SLATE software choose not to buy Fortres Grand's CLEAN SLATE software.  Sales of Fortres Grand's CLEAN SLATE software dropped by more than half after the Film's release.  Compl. ¶ 28.

## SUMMARY OF THE ARGUMENT

Fortres Grand pleaded trademark infringement under the Lanham Act and unfair competition under both the Lanham Act and Indiana common law before the district court.  Fortres Grand did not ask for an injunction,  to excise all traces of the use of CLEAN SLATE in the Film, nor for any of Warner Bros.' profits from the Film.  Instead, Fortres Grand simply requested damages for the lost sales it suffered and its corrective advertising efforts as a result of the confusion over its CLEAN SLATE security software and Warner Bros.' security-hacking software of the same name featured in *The Dark Knight Rises*.

The district court made four critical mistakes that warrant reversal: 1) it misunderstood and misapplied the reverse confusion standard established in this Circuit; 2) it concluded that it could not compare the impact on consumers of the

Film's software and Fortres Grand's software, even though consumers expect merchandising of movie-created products and services; 3) it failed to recognize the plausibility of consumers assuming a connection between the products in such a marketing environment; and 4) it wrongly afforded absolute First Amendment protection to the Film's confusion-causing commercial speech.

The district court also wrongly considered only one of this Circuit's likelihood of confusion factors and failed to recognize that the Indiana common law of unfair competition is broader in scope than the Lanham Act.

Warner Bros.' advertising of its Film and of CLEAN SLATE, Internet articles discussing Warner Bros.' CLEAN SLATE software, and the dramatic drop in Fortres Grand's sales immediately after the Film's release confirm that reverse confusion—the senior user's use overwhelmed by that of the junior user—is not only plausible, but factual. Further, given the large-scale merchandising that accompanies major blockbusters, it is not implausible to conclude that consumers may believe that references to a software they recognize from *The Dark Knight Rises* are for the same software they saw in the Film, and not for the software of a much smaller, but nonetheless senior, user of the mark CLEAN SLATE. Finally, the district court needlessly invoked the First Amendment and a balancing test that is not applicable in a case where the plaintiff has pleaded a plausible likelihood of confusion – the exact harm the Lanham Act seeks to remedy.

## STANDARD OF REVIEW

The District Court granted Warner Bros.' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6. Dkt. No. 30. The Seventh Circuit reviews a district court's decision to dismiss *de novo*. *Mid-America Title Co. v. Kirk*, 991 F.2d 417, 419 (7th Cir. 1993). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations in a complaint must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A complaint need not contain detailed factual allegations to meet that standard," but merely "must 'be enough to raise a right to relief above the speculative level.'" *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, courts "accept[] all well-pleaded factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

## ARGUMENT

A.    **It is Not Implausible on Its Face That Potential Purchasers of Fortres Grand's CLEAN SLATE Software Are Likely to Mistakenly Believe That the Software is Authorized by or Otherwise Associated with Warner Bros., or the Movie *The Dark Knight Rises*, Because of Warner Bros.' Use of CLEAN SLATE for Software in That Movie**

This case presents an issue of first impression for this Circuit: can the use of a trademark for a fictional product infringe the trademark of a real product? At the heart of any Lanham Act claim is the question whether consumers are likely to be

confused by the junior user's use of a mark. Here, Fortres Grand's real potential customers are deciding not to purchase the real CLEAN SLATE software because they mistakenly associate it with the fictional CLEAN SLATE software that appears in Warner Bros.' Film.  This is underscored by the dramatic drop in Fortres Grand's sales of its CLEAN SLATE product immediately after the Film was released.  Fortres Grand has therefore pleaded more-than-plausible claims of trademark infringement and unfair competition.

> **1.** **The District Court Wrongly Ruled that in Order to State a Claim for Reverse Confusion, Fortres Grand had to Allege that the Public had Been Deceived into Believing that Fortres Grand Created or Sponsored Warner Bros.' Movie**

The district court mishandled Fortres Grand's reverse confusion argument. Reverse confusion occurs when "a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user.  In such a case, the junior user does not seek to profit from the goodwill associated with the senior user's mark.  Nonetheless, the senior user is injured . . ." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992).  Relief from reverse confusion serves to "protect[] senior mark holders from the risk of losing the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets if the public comes to assume that its product is that of, or connected with, the junior user." *Wm. Wrigley Jr. Co. v. Swerve IP, LLC*, 900 F. Supp. 2d 794, 799 (N.D. Ill. 2012) (internal citations omitted).

Warner Bros. saturated the market with its wildly successful Film and advertising for the Film that directly referenced the Film's CLEAN SLATE software. Consequently, online consumers of security software seeking to learn about CLEAN SLATE software found numerous references to Warner Bros' CLEAN SLATE—a product that has a nefarious purpose compared to the CLEAN SLATE software offered by Fortres Grand. Therefore, would-be purchasers of Fortres Grand's CLEAN SLATE software suspect that Fortres Grand's CLEAN SLATE software is somehow connected with Warner Bros.' and that Fortres Grand is trading on the Film software's fame. In short, Warner Bros.' use of CLEAN SLATE has caused Fortres Grand to lose control of its own corporate identity and the goodwill in its CLEAN SLATE mark.

The district court misunderstood the reverse confusion standard. It instead applied the forward confusion standard to a straw man—sponsorship of Warner Bros.' multi-million dollar film by a small software company. Although the district court correctly stated the standard (Op. at 7), it reversed the standard when applying it to the facts: "in order to state a claim for reverse confusion, Fortres Grand has to make plausible allegations that Warner Bros. saturated the market with a product that the public has been 'deceived into believing . . . emanates from, is connected to, or is sponsored by' Fortres Grand." (Quoting *Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 484 (7th Cir. 2007)).. This is wrong. To find a likelihood of reverse confusion, it must be plausible that the public is likely to believe that the *senior user's* product, that is, Fortres Grand's CLEAN SLATE

software, emanates from, is connected to, or is sponsored by the *junior user*, that is,

Warner Bros. *Sands, Taylor & Wood Co.*, 978 F.2d at 957.

In reversing the actual standard, the district court unsurprisingly found it

implausible that Fortres Grand would sponsor Warner Bros.' Film or the Film's

software. As the district court stated, "to state a claim for reverse confusion in this

instance, Fortres Grand would have to plausibly allege one of two things: 1)

consumers have been deceived into believing that the fictional 'clean slate' software

in the movie 'emanates from, is connected to, or is sponsored by' Fortres Grand or 2)

consumers have been deceived into believing that the film The Dark Knight Rises

'emanates from, is connected to, or is sponsored by' Fortres Grand. *Custom*

*Vehicles*, 476 F.3d at 484. For entirely obvious reasons, neither of these is a

plausible claim." Op. at 12.

Indeed, these two scenarios may well be implausible, but neither of them

address the claim asserted by Fortres Grand or the reverse confusion doctrine.[1]

Fortres Grand pleaded that Warner Bros.' saturation of the market with its Film

and advertising caused Fortres Grand's potential consumers to mistakenly believe

CLEAN SLATE was somehow associated with Warner Bros. and its fictional

CLEAN SLATE, as a movie tie-in, as a licensed novelty, or worse. This confusion

---

[1] In this case, it is actually far from obvious that the first of these scenarios—essentially that Warner Bros.' use of CLEAN SLATE was a product placement—is implausible. The district court explained the supposed implausibility of this scenario by saying that "[a]ny consumer going online or into a store looking to buy the 'clean slate' software mentioned in *The Dark Knight Rises* would quickly find that they are unable to do so because *it is not a real product*." (Op. at 12 (emphasis in original).) However, a consumer aware of CLEAN SLATE software from the film could in fact find it, or, more importantly, think they found it, upon encountering Fortes Grand's CLEAN SLATE software.

caused consumers to forego purchasing Fortres Grand's CLEAN SLATE software in favor of other security software, untarnished by the negative association with Warner Bros.' use.  This is directly illustrated by the fall-off in sales experienced by Fortres Grand.  Warner Bros. has caused real damage to Fortres Grand's goodwill and sales of its CLEAN SLATE product.

> ## 2.  The District Court Wrongly Found that Warner Bros' Fictional Use of CLEAN SLATE Could Not be Actionable

The district court found, as a matter of law, that in analyzing likelihood of confusion, the only relevant comparison was between the two parties' "real products," not between Fortres Grand's real product and Warner Bros.' fictional product, which actually bears the trademark.  Op. at 9.  Put another way, the district court concluded that Warner Bros.' fictional CLEAN SLATE product was totally irrelevant to the likelihood of confusion analysis.  However, this argument ignores the plain text of the Lanham Act, and it ignores the commercial reality that consumers are used to connecting movies with real world products.

Section 43 of the Lanham Act provides, in relevant part:

> Any person who, **on or in connection with any goods** or services, or any container for goods, **uses in commerce any word, term, name**, symbol, or device, or any combination thereof . . .  which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (emphasis added).  A straightforward reading of this Section would result in a comparison of Warner Bros.' CLEAN SLATE mark—which it

"uses in commerce," because *The Dark Knight Rises* moves within commerce—"in connection with" a good, namely, software, with Fortres Grand's CLEAN SLATE mark used in connection with software because Fortres Grand believes it "is likely to be damaged by such act." Most importantly, though Warner Bros.' CLEAN SLATE may, at this point, be wholly fictional, Fortres Grand's drop in sales is entirely real. Consumers have been confused and are choosing not to buy Fortres Grand's CLEAN SLATE software because of that confusion.

In deciding that it must compare Warner Bros.' Film and Fortres Grand's software, the district court relied on *Ocean Bio-Chem, Inc. v. Turner Network Television, Inc.*, 741 F. Supp. 1546 (S.D. Fla. 1990) and *Davis v. Walt Disney Co.*, 430 F.3d 901 (8th Cir. 2005). Both cases actually support reversal here, if only for the reason that they were decided on summary judgment with developed facts, not on a dismissal based on the pleadings alone. There are further reasons they both support reversal.

The plaintiff in *Ocean Bio-Chem* alleged confusion between its STAR BRITE trademark for automotive and aircraft polishes and cleaners and defendant's fictional "Starbrite Batteries." The court in that case denied defendant's motion to dismiss. It was only later, on summary judgment, that it held for defendant. In doing so, the court considered the defendant's fictional product and plaintiff's real product in the "type of trademark" likelihood of confusion factor, noting, "The court determines it unlikely that ordinary prudent purchasers will connect the various products marketed under the Star Brite name to fictional batteries. Nearly all Star

-12-

Brite products are polishes or cleaners . . . None of these products are related to batteries…” *Ocean Bio-Chem*, 741 F. Supp. at 1555.

Here, unlike in *Ocean Bio-Chem*, the fictional product created by Warner Bros., CLEAN SLATE for software, is very similar to Fortres Grand's CLEAN SLATE software.  Both ultimately delete data from a computer, albeit for different reasons.  Ordinary prudent purchasers could easily "connect the [software] marketed under the [CLEAN SLATE] name to [Warner Bros.'] fictional software."

In *Davis*, as in *Ocean Bio-Chem*, the court's decision was made on summary judgment, not on a motion to dismiss.  Additionally, in *Davis*, unlike here, the court did not consider the theory of reverse confusion, and thus did not consider whether consumers might associate Plaintiff's small, but senior, public-access television show with defendant's junior use of the mark at issue in its made-for-TV movie.

In addition to having been decided from a different procedural posture, neither *Davis* nor *Ocean Bio-Chem* concerned a hit movie on the scale of the Film. Movie properties, including Warner Bros.' *Dark Knight Trilogy*, are regularly licensed for video games, software, clothing, toys, novelty items, and more.  Other courts have considered the wide reach of movie studios in reverse confusion cases. In *Dreamwerks Production Group, Inc. v. SKG Studio*, 142 F.3d 1127 (9th Cir. 1998), the Ninth Circuit reversed a grant of summary judgment for the defendant in a reverse confusion case, partly due to a plausibly pleaded likelihood of confusion between a senior user's goods or services and merchandising associated with a large movie studio.  It explained that the court "must focus on Dreamwerks' customers

and ask whether they are likely to associate the [Dreamwerks] conventions with DreamWorks the studio.  Entertainment studios control all sorts of related industries: publishing, clothing, amusement parks, computer games and an endless list of toys and kids' products. In this environment it's easy for customers to suspect DreamWorks of sponsoring conventions at which movie merchandise is sold." *Dreamwerks*, 142 F.3d at 1131.  In this marketplace context, consumers who see Fortres Grand's CLEAN SLATE software in the real world and who are familiar with *The Dark Knight Rises*, or encounter advertising featuring the software from the Film, or Internet discussions of that software, are likely to believe that Fortres Grand's software is a novelty or entertainment product—or is malware that simulates the deletion properties of the Film's software—and therefore believe that Fortres Grand's software is associated with, or emanates from, a fully integrated studio like Warner Bros.

Additionally, the fictitious nature of Warner Bros.' software contributes to the commercial effect of the confusion between the real goods and the fictional goods.  Whether confusion is likely must be considered in the context in which the goods are sold.  *See G. D. Searle & Co. v. Charles Pfizer & Co.*, 265 F.2d 385, 388 (7th Cir. 1959) ("Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered.").  Fortres Grand's CLEAN SLATE Software is sold in a market strewn with fictitious, malicious software.  The fictitious nature of Warner Bros.' CLEAN SLATE heightens, rather than

eliminates, the likelihood of confusion over the source of Fortres Grand's software. *See* Compl. ¶¶ 14-15.

### 3.    The District Court Wrongly Found Consumer Confusion Between the "Real" Products Implausible as a Matter of Law

Even if the district court were correct that under Lanham Act §43 it is Warner Bros.' Film and Fortres Grand's software that must be compared, it was wrong to find confusion between the Film and the software implausible as a matter of law.

The district court adopted Warner Bros.' contention that "Plaintiff is not in the motion picture business, and it would be absurd to think that customers buy tickets to *The Dark Knight Rises* or purchase the DVD/Blu-ray because of a perceived association of the Film with Fortres Grand's products." Op. at 13.  This statement again demonstrates the district court's misunderstanding of reverse confusion.  Fortres Grand's argument was not that customers would buy tickets to a film because of its perceived connection with Fortres Grand, but that consumers have avoided purchasing Fortres Grand's CLEAN SLATE software out of a mistaken belief that it was somehow related to the fictional software they had seen in Warner Bros.' Film and on websites advertising or discussing the Film.

Further, the assertion that it would be "absurd" to connect Warner Bros. and its Film to a software program is contradicted by Warner Bros.' status as a fully integrated studio that produces movies, television, videogames, computer games, and mobile apps.  Ordinary consumers watch films produced by broad-based studios on their computers and play videogames with characters from popular movies

created by those same studios.  Those same consumers then shop for any number of goods, including security software, over the internet.  As the court pointed out in *Dreamwerks, supra,* it is far from "absurd" to suggest that consumers may believe that a fully integrated entertainment company like Warner Bros. might decide to merchandise one of its fictional products to generate further buzz for a film and to expand the company's offerings.  Fictional products in movies regularly enter the real world, with Luke Skywalker's lightsaber, Harry Potter's wand, and even the Batmobile all available for purchase.

    4.    **The District Court Improperly Found Confusion Unlikely by Comparing the Parties' Products and Not Addressing Any Other Seventh Circuit Confusion Factors**

The district court found confusion implausible based entirely on perceived differences between Warner Bros.' Film and Fortres Grand's software.  This truncated analysis is erroneous for the reasons stated above, and also is contrary to Seventh Circuit law.  The Seventh Circuit analyzes likelihood of consumer confusion by considering seven factors: similarity of marks; similarity of products; area and manner of concurrent use; degree of care likely to be exercised by consumers; strength of complainant's mark; actual confusion; and alleged infringer's intent.  *Helene Curtis Industries, Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977).  Essentially, the district court found that, because one of the Seventh Circuit likelihood-of-confusion factors— "the similarity of the products for which the name is used"—allegedly tilts in Warner Bros.' favor, the case had to be dismissed.  However, "[n]one of the seven confusion factors alone is dispositive in a likelihood of confusion analysis." *AHP Subsidiary Holding  Co. v. Stuart Hale Co.*,

1 F.3d 611, 616 (7th Cir. 1993). As this court has held, "[t]he fact that the products at issue may be 'very different' is not dispositive of the issue of the similarity of the products in determining the existence of a likelihood of confusion between products." *McGraw-Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1169 (7th Cir. 1986) (reversing summary judgment that confusion was unlikely between TRON for movie and video games and TRON for electrical fuses); *see also id.* at 1168 ("[T]his court has reversed lower court decisions that have placed excessive importance on certain factors.").

Even courts in the cases the district court relied on, *Ocean Bio-Chem* and *Davis v. Walt Disney Co.*, only granted summary judgment after each examined its circuit's factors to determine whether confusion was likely. *See Ocean Bio-Chem*, 741 F. Supp. at 1553-61 (applying the Eleventh Circuit's seven-factor test); *Davis*, 430 F.3d at 903-06 (applying the Eighth Circuit's six-factor test).

> **5.    The District Court Failed to Consider Fortres Grand's State Unfair Competition Claims Apart From Fortres Grand's Federal Claims**

The district court incorrectly subsumed Fortres Grand's common law unfair competition claim within its federal trademark infringement analysis. Contrary to the district court's conclusion that "all three of Fortres Grand's claims—infringement, federal unfair competition, and state unfair competition—are analyzed under the same trademark infringement analysis," (Op. at 2), in Indiana, unfair competition law is "much broader" than "palming off of one's goods and services as that of another, and the attempt thereof." *Keaton & Keaton v. Keaton*,

842 N.E.2d 816, 820 (Ind. 2006) (internal citations omitted). Unlike a likelihood of confusion analysis, unfair competition in Indiana "does not refer to a tort with a specific number of elements, but instead describes a general category into which a number of new torts may be placed when recognized by the courts." *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) (noting that the "unfair competition category" is "open-ended, and nameless forms of unfair competition may be recognized at any time for the protection of commercial values." (*quoting* W. Page Keeton, PROSSER AND KEETON ON THE LAW OF TORTS, 105 (5th ed. 1984). Here, the outcome does not rest on whether consumers could ultimately purchase Warner Bros.' *fictitious* software, but rather the commercial effect that its use of an identical trademark had on the maker of the *real* CLEAN SLATE software. Warner Bros.' actions have tainted Fortres Grand's product in the eyes of its potential customers and Fortres Grand is entitled to consideration under this Indiana law intended to "protect commercial values." *See also Felsher*, 755 N.E.2d at 598 (citing *Hartzler v. Goshen Churn & Ladder Co.*, 55 Ind. App. 455, 464 (1914)) (Indiana courts look to "whether . . . the name or mark used by defendant has previously come to indicate and designate plaintiff's goods."); *Serenity Springs v. LaPorte Cnty. Convention & Visitors Bureau*, 986 N.E.2d 314, 327 (Ind. Ct. App. 2013) (remanding the case because the trial court improperly grouped both the common law claim and the trademark infringement claim under the narrower likelihood of confusion standard).

## B. The District Court Wrongly Afforded Warner Bros.' Absolute First Amendment Protection

1.    **The First Amendment Does not Absolutely Protect Speech that is Likely to Cause Consumer Confusion**

The district court, relying on a Second Circuit case, *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), concluded that the First Amendment permits Warner Bros.' use of the CLEAN SLATE mark in an artistic work, notwithstanding any consumer confusion caused by that use.  Op. at 14-19.  However, the First Amendment does not insulate a party from liability for speech that is likely to cause, or that has caused, significant consumer confusion.  Here, Warner Bros.' use of the CLEAN SLATE mark has caused consumer confusion leading to substantial lost sales for Fortres Grand.

*Rogers* involved a Lanham Act claim brought by famous performer Ginger Rogers against the producers and distributors of the film *Ginger and Fred*, which title was an allusion to Ms. Rogers and her dance partner Fred Astaire.  *Rogers*, 875 F.2d at 996.  In *Rogers*, the Second Circuit fashioned a balancing test, namely, whether "the public interest in avoiding consumer confusion outweighs the public interest in free expression."  *Id.* at 999.  As the court noted, striking this balance was no easy task because while "[m]ovies, plays, books, and songs are all indisputably works of artistic expression and deserve protection," they are nonetheless "sold in the commercial marketplace like other more utilitarian products, making the danger of consumer deception a legitimate concern that warrants some government regulation."  *Id.* at 997.  In order to strike this balance "[i]n the context of allegedly misleading titles using a celebrity's name," the court held that balancing these interests "will normally not support application of the Act

unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id.* at 999.

While purporting to be a First Amendment case, *Rogers*, at its core, was decided on likelihood-of-confusion grounds.  Ultimately, the *Rogers* court concluded that unless the title bore no artistic relevance to the work or was explicitly misleading, consumers of an artistic work would understand that the title *Ginger and Fred* was an allusion to the famous pair, and not an endorsement.[2]

The balance between preventing consumer confusion and protecting free expression that troubled the *Rogers* court is the same issue addressed in every trademark case.  *Rogers* does not immunize confusing speech from trademark liability.

Many courts dealing with core First Amendment speech have granted relief where such speech was likely to cause confusion.  In *United We Stand America, Inc. v. United We Stand, America New York, Inc.*, a Second Circuit case decided after

_____

[2] Second Circuit Judge Pierre N. Leval made this point deftly:

> Our court ruled against Ginger.  The opinion observed that the name of a famous person in the title of a book or film in no way implies that person's sponsorship.  Nor had Ginger's name been used deceptively to add luster to a product that had no relationship to her.  There was no consumer confusion.  There was no false designation of origin.  In short, there was nothing to the Lanham Act claim.

> The court, nonetheless, constructed a complex test for imposing First Amendment restraints on the scope of the Lanham Act.  The invocation of the First Amendment was . . . unnecessary.

Pierre N. Leval, *Trademark: Champion of Free Speech*, 27 COLUM. J.L. & ARTS 187, 202-03 (2004).

*Rogers*, plaintiff, an affiliate of H. Ross Perot's presidential campaign committee, had registered the trademark UNITED WE STAND AMERICA for use in connection with political activities.  128 F.3d 86, 88 (2d Cir. 1997).  The defendants, a former Perot campaign worker and an organization he founded, began using the mark in connection with its own political activities.  *Id.*  Plaintiff sued for trademark infringement, and defendants argued that their use of the mark UNITED WE STAND AMERICA for political expression was protected by the First Amendment.  *Id.* at 93.  The court rejected this argument, holding that even if the defendants "might communicate [their] political message more effectively by appropriating [plaintiff]'s Mark, such appropriation would cause significant consumer confusion.  It is not protected by the First Amendment."[3]  *Id.* at 93 (footnote omitted).

This Court reached a similar conclusion in *TE-TA-MA Truth Foundation Family of URI, Inc. v. World Church of the Creator*, 297 F.3d 662 (7th Cir. 2002).  There the issue was whether allowing a religious sect to claim trademark rights in its name—thereby denying others the right to use that name—violated the First Amendment.  The Court rejected this argument, stating:

> Trademark rights promote the aims of the first amendment by enabling producers of the spoken and written word to differentiate themselves.  If multiple businesses use the same (or confusingly similar) names, the result is cacophony rather than discussion or debate.  If every candidate on the ballot ran under the same name, this

---

[3] The court in *United We Stand America* acknowledged that defendants had intentionally selected the mark not to communicate a message but to associate itself with plaintiff.  128 F.3d at 88.  However, as the court made clear, its conclusion that the First Amendment did not bar trademark infringement liability was not dependent on this fact.

would do more to befuddle the voters than to promote the candidates'
freedom of expression. . . . The World Church has every right to a
distinctive name; it does not have a constitutional right to use some
other denomination's incontestable trademark.

*Id.* at 667.

These cases confirm that even core expressive, political, and religious speech
may be infringing when consumer confusion is likely.  Fortres Grand's CLEAN
SLATE products are sold in a market in which consumers are especially sensitive to
the possibility of fake and malicious software.  Compl. ¶¶ 14-15.  Even though
Warner Bros. has used CLEAN SLATE only in connection with a fictional product,
this use has nonetheless caused consumer confusion, leading to a significant decline
in sales of Fortres Grand's CLEAN SLATE software.  Compl. ¶¶ 28-29.  Even
assuming that the First Amendment creates a higher bar for certain Lanham Act
claims, which would be contrary to this Circuit's *TE-TA-MA* decision, the balancing
of interests cannot possibly be resolved based on pleadings alone.

The district court's opinion expressed some concern that allowing Fortres
Grand's suit to go forward would potentially chill future speech.  Op. at 17.  But any
possible chilling effects are cabined by the requirement that a plaintiff plausibly
plead likelihood of confusion.  Here, Warner Bros. decided to use a mark that was
identical to Fortres Grand's.  If it followed common commercial practice and
obtained a trademark search first, it likely knew about Fortres Grand's mark.  It
used the mark on a fictional product that has directly undermined the purpose and
sales of Fortres Grand's security product.  Moreover, Warner Bros.' use acquired
significant notoriety on the Internet, the channel in which Fortres Grand sells its

product.  Purchasers of security software are particularly sensitive to any indicia

that the software may be fake, malicious, or otherwise not what it purports to be.

This has led consumers to avoid Fortres Grand's CLEAN SLATE software out of a

mistaken belief that it is somehow related to the software they saw in the incredibly

popular film *The Dark Knight Rises*.  This confusion has had a devastating effect on

Fortres Grand's CLEAN SLATE business.  In this possibly narrow and unusual

factual context, consumers have been confused to substantial effect.

Much of the district court's concern with the chilling effects of Fortres

Grand's lawsuit appears to stem from a misunderstanding of the nature of

trademark rights.  The district court believed that "the chilling effects on speech

would be enormous" if Fortres Grand were able to claim "monopoly power" over the

use of the phrase "clean slate."  Op. at 17.  However, trademark law does not confer

any monopoly.  *See, e.g., Kohler Co. v. Moen Inc.,* 12 F.3d 632, 643 (7th Cir. 1993).

It merely protects the right of producers to control and assert their commercial

identities and the right of consumers to make informed purchasing decisions.  No

speech is prohibited except that speech which is likely to cause—or has caused—

consumer confusion.  The question, then, is not whether Fortres Grand may claim

"monopoly power" over the phrase "clean slate."  Op. at 17.  Obviously it cannot, and

it has no interest in doing so.  The question instead is whether Fortres Grand may

be entitled to recover damages caused by Warner Bros.' use of CLEAN SLATE when

that use has undermined Fortres Grand's right to control its commercial identity

and has caused purchasers to mistakenly avoid Fortres Grand's CLEAN SLATE

software.  Allowing Fortres Grand to assert monopoly power might chill speech;

merely allowing it to recover for the damage that Warner Bros. has caused will not.

The Lanham Act "promote[s] the aims of the first amendment by enabling

producers of the spoken and written word to differentiate themselves." *TE-TA-MA*,

297 F.3d at 667.  The First Amendment does not require that Fortres Grand forfeit

its right to the exclusive use of an identifying mark, and it does not require

consumers to bear the high search costs of commercial confusion.  To the contrary,

the public interest in free expression is best protected by allowing companies to

protect their trademarks.

### C.    The District Court Wrongly Considered and Relied on Two Unauthorized Website Printouts in Ruling on Warner Bros.' Motion to Dismiss

In ruling on Warner Bros.' motion to dismiss, the district court improperly

relied on printouts from two of Warner Bros.' promotional websites for the film.  Op.

at 4.  "Generally, matters outside the pleadings may not be considered" on a motion

to dismiss.  *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th

Cir. 2002).  There is a "narrow exception" that occurs when the documents that are

"concededly authentic" and may be incorporated by reference.  *Levenstein v.

Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *Albany Bank & Trust Co.*, 310 F.3d at

971; *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Websites are not static documents, and cannot be "concededly authentic."

They can be modified at any time and courts have therefore refused to consider

them on motions to dismiss.  *See, e.g., Powertronix Corp. v. PV Powered, Inc.*, C-08-

5187 MMC, 2009 WL 102706, at *1 (N.D. Cal. Jan. 14, 2009) (refusing to consider

-24-

the terms and conditions section of an electronic retailer's website in part because the version of the website defendant sought to admit might have been modified since the relevant transactions were made); *see also Curran v. Amazon.com, Inc.*, CIV.A. 2:07-0354, 2008 WL 472433, *14 (S.D.W. Va. Feb. 19, 2008) (noting authenticity problems concerning websites, and disregarding website evidence on other grounds, and stating that because "[a] party's website is self-serving . . . there is no assurance that the content is authentic.").

Here, there is no indication how these websites appeared to potential consumers of Fortres Grand's CLEAN SLATE software who accessed these websites in the months before this suit was filed, or how the websites appeared before Warner Bros. was sued over their contents.

The district court relied on this Court's decision in *Williamson v. Curran*, but in that case this Court relied on documents that were referenced in and attached to a complaint only because those documents were concededly authentic. 714 F.3d 432, 436 (7th Cir. 2013). Additionally, the documents at issue in that case—two written reports by a sheriff's deputy, and a written police report—did not have any of the special authenticity problems characteristic of websites. *Id.* at 438-39. Because neither *Williamson*, nor any other Seventh Circuit case, permits a court to consider unauthenticated website printouts on a motion to dismiss, and because the district court's dismissal was based in part on a consideration of the website

printouts provided by Warner Bros., the district court's consideration of the Rykin Data website printouts was prejudicial error.[4]

## CONCLUSION

For the reasons discussed above, Fortres Grand respectfully requests that this Court hold Fortres Grand plausibly pleaded confusion between Fortres Grand's use of CLEAN SLATE for software and Warner Bros.' similar use in the Film and that this plausible claim is not precluded by the First Amendment. Fortres Grand requests that this Court therefore reverse the lower court's decision and remand this case.

---

[4] Even if they had been "concededly authentic" and properly considered by the lower court, the promotional websites are commercial speech because they "propose a commercial transaction," namely, that a visitor buy a ticket to see *The Dark Knight Rises*. *Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976). Here, the content of the Rykin Data websites is not "inextricably intertwined" with the film itself. The website printouts attached to Warner Bros. motion to dismiss contain material that goes well beyond what is featured in the film, including a detailed explanation of the mechanics of the "Clean Slate" program, a fictitious patent application, the Rykin Data Corporation logo, and information on a "police report." While these elements may be creative, they are not *The Dark Knight Rises*. Accordingly, the noncommercial and commercial aspects of Warner Bros.' speech are not "inextricably intertwined." *See Board of Trustees of State University of New York v. Fox*, 494 U.S. 469, 479 (1989) ("No law of man or of nature makes it impossible to sell housewares without teaching home economics, or to teach home economics without selling housewares. Nothing in the resolution prevents the speaker from conveying, or the audience from hearing, these noncommercial messages, and nothing in the nature of things requires them to be combined with commercial messages.")

Dated: October 21, 2013                Respectfully submitted,

                                       By:    /Phillip Barengolts/

                                              One of the Attorneys for Appellant

                                              Phillip Barengolts
                                              Elisabeth K. O'Neill
                                              Pattishall, McAuliffe, Newbury
                                               Hilliard & Geraldson LLP
                                              200 South Wacker Drive, Suite 2900
                                              Chicago, Illinois 60606
                                              (312) 554-8000

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/Phillip Barengolts/

## CIRCUIT RULE 30(d) STATEMENT

I hereby certify that all materials required by Fed. R. App. P. 30 (a) and (b)

are included in the Short Appendix.

<u>/Phillip Barengolts/</u>